W. EUGENE DAVIS, Circuit Judge:
We took this case en banc to consider whether the district court’s failure to give the defendant an opportunity to allocute as required by Federal Rule of Criminal Procedure 32 is subject to either harmless error or plain error review. For the reasons that follow, we conclude that, in the absence of an objection by the defendant, such a failure is subject to plain error review.
I. FACTS AND PROCEEDINGS
The panel, in United States v. Reyna, 331 F.3d 448 (5th Cir.2003), gave a cogent statement of the facts and background which we reproduce below:
Miguel Enrique Reyna plead guilty in October 1996 to possession of a sawed-off shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871, and was sentenced to 46 months’ imprisonment and three years of supervised release.
In February 2000, the district court revoked the term of supervised release because Reyna had been caught driving while intoxicated. The court gave Reyna the option of immediately serving 6 months in prison, or being sentenced to 12 months’ imprisonment, with the execution of that sentence suspended for three years of supervised release. Reyna chose the latter option. The court coupled its generosity with a stern warning:
THE COURT: I will tell you what I will do. I will sentence you to 12 months in jail. I will suspend the execution of those 12 months, which simply means that I will allow you to surrender voluntarily. But the moment you spit on the sidewalk, I don’t care whether you get a traffic ticket, you are gone for 12 months. You can do that or I will give you six months today and you will get it over with. Which one do you want?
After Reyna chose the 12-month option, the court warned him again: “I am talking about anything. You are gone. You are on your way for 12 months. It is just a matter of me setting a date for voluntary surrender.”
During the term of supervised release, Reyna tested positive for drugs. In an August 2001 hearing, the court sentenced Reyna to 12 months’ imprisonment and 2 years of supervised release. The court addressed Reyna during the following exchange:
THE COURT: The matter before me, then, Mr. Reyna, is simply there is evidence to the effect that you — from a specimen taken from you back in September of the year 2000 that you had ingested cocaine. Is that true?
THE DEFENDANT: Yes, sir.
THE COURT: All right.
THE DEFENDANT: Correct. Yes, Your Honor.
*347 THE COURT: Well, you are already on your way ... You can’t blame anybody, can you?
THE DEFENDANT: No.
Later in the hearing, Reyna attempted to say something, but was interrupted by the court. The following colloquy ensued:
THE COURT: If I could send you away for ten years, I would. You know why? You know why? Because you hurt other people to whom we give this opportunity. Your attorney asks for relief of this kind sometimes. And when people like you sort of break faith and when people are given the benefit of these kinds of things, what you are doing is just hurting other people. You understand that. One thing is to hurt yourself and another one is to affect other persons and you have.
All right. Good luck to you.
THE DEFENDANT: Thank you.
Reyna did not object to the denial of his right to allocution.
II. STANDARD OF REVIEW
Under this court’s precedents, the district court’s denial of the right of allocution is not subject to plain or harmless error review under Rule 52. Rather we have consistently held that this error requires automatic reversal. United States v. Dabeit, 231 F.3d 979, 981 (5th Cir.2000); United States v. Myers, 150 F.3d 459 (5th Cir.1998). We took this case en banc to reconsider these precedents.
III. DISCUSSION
When Reyna was sentenced, Fed. R.Crim.P. 32(c)(3)(C) required the district court to “address the defendant personally and determine whether the defendant wishe[d] to make a statement and to present any information in mitigation of the sentence” before imposing sentence.[2] United States v. Rodriguez, 23 F.3d 919, 921 (5th Cir.1994). Under the law of this Circuit, the right to allocution applies at sentencing following revocation of supervised release.[3] Id. Although the district court addressed Reyna prior to imposing sentence, the court did not give Reyna the opportunity to speak in mitigation of his sentence. We therefore agree with the panel that the district court erred in failing to comply with Rule 32.
The government argues, however, that even if the district court erred in failing to give Reyna an opportunity to allocute, because neither Reyna nor his counsel objected, we should review this error under the prism of either harmless error or plain error as provided by Rule 52. Fed.R.Crim.P. Rule 52 provides: *348 As a practical matter, Rule 52(a) applies when a defendant has made a timely objection to an error and the reviewing court engages in an inquiry to determine whether the error was harmless, that is whether the defendant suffered prejudice from the error. United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Because Reyna did not object to the court’s failure to allow allocution, Rule 52(a) has no potential application to this case. Rule 52(b), on the other hand, applies when no timely objection was made. Thus, Rule 52(b) is the subsection of this rule that has potential application to this case.
*347 (a) Harmless error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.
(b) Plain error. A plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.[4]
*348 As stated above, our cases have consistently held that we must automatically reverse a district court which fails to give the defendant an opportunity for allocution as required by Rule 32. Dabeit, 231 F.3d at 981; Myers, 150 F.3d at 464-65. This position is not without Supreme Court authority and reflects the high respect accorded the right to allocute at sentencing. In Green v. United States, a plurality of the Supreme Court determined that the defendant had failed to meet his burden of showing that he was not accorded his right of allocution. However, eight justices agreed that in future cases, trial judges should “unambiguously address themselves to the defendant” and thus “leave no room for doubt that the defendant had been issued a personal invitation to speak prior to sentencing.” Green v. United States, 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). The trial court had addressed the defendant and his counsel jointly, asking “did you want to say something?” rather than speaking directly to the defendant. Id. at 302, 81 S.Ct. 653. Justice Frankfurter, speaking for the four justice plurality, explained why the right of allocution is so deserving of protection.
The design of Rule 32(a) did not begin with its promulgation: its legal provenance was the common-law right of allo-cution. As early as 1689, it was recognized that the court’s failure to ask the defendant if he had anything to say before sentence was imposed required reversal. See Anonymous, 8 Mod. 265, 266, 87 Eng. Rep. 175 (KB.) Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century — the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself. We are buttressed in this conclusion by the fact that the rule explicitly affords the defendant two rights: “to make a statement in his own behalf,” and “to present any information in mitigation of punishment.” We therefore reject the Government’s contention that merely affording *349 defendant’s counsel the opportunity to speak fulfills the dual role of Rule 32(A).
Id. at 304, 81 S.Ct. 653.
Four justices speaking in dissent through Justice Black disagreed with the Court’s decision to deny relief to the defendant and stressed the importance of enforcing the rule by requiring remand. In their view,
A rule so highly prized for so sound a reason for so long a time deserves to be rigorously enforced by this Court, not merely praised in resounding glittering generalities calculated to soften the blow of nonenforcement.
Id. at 311, 81 S.Ct. 653 (Black, J., dissenting).
One year after the Green decision, the Supreme Court held in Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), that violation of a defendant’s right to allocution was not a predicate for habeas corpus relief absent aggravating circumstances. After stating that the simple failure of the trial court to address a defendant who had been given the opportunity for allocution is not an error of the magnitude that is cognizable under a writ of habeas corpus, the Court stated:
It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.
368 U.S. at 428, 82 S.Ct. 468. However, the Hill case also observed in a footnote that the appropriate remedy on direct appeal for a violation of the rule is set forth in Van Hook v. United States, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961). Van Hook is a one sentence opinion that cites Green as requiring reversal and remand of the defendant’s case for resen-tencing when a violation of Rule 32 occurs. None of these eases mention Rule 52 of the Criminal Rules.
Because the Supreme Court did not mention Rule 52 in Green, Van Hook or Hill, we have no way of knowing whether the Court simply did not consider Rule 52 because it was not brought to their attention or whether it was the Court’s belief at that time that the Rule did not apply to violations of the right of allocution on direct appeal and that the appropriate remedy for such a violation was automatic re-sentencing. We therefore glean from our review of Green, Van Hook and Hill, that the right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdictional.
We have received very little guidance from the Supreme Court about the right of allocution since its decision in Hill in 1962.[5] The Supreme Court, however, has been very active in the forty years since Green, Van Hook and Hill in clarifying the concepts of harmless error and plain error set forth in Rule 52. Until recently, it was unclear whether on direct appeal Rule 52(b) should apply to every conceivable *350 error to which a defendant failed to object, or whether there existed a class of violations so serious that automatic reversal was required without application of Rule 52(b). In Olano, the Supreme Court answered this question. 507 U.S. at 731, 113 S.Ct. 1770. It stated that a criminal defendant’s “constitutional right or a right of any other sort” may be forfeited by the failure to make a timely objection. Id. (internal quotations and citations omitted). Accordingly, the Court suggested that all forfeited errors in a criminal proceeding are subject to Rule 52(b) analysis.
In Johnson v. United States, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Supreme Court specifically stated that the seriousness of the claimed error does not remove it from the application of Rule 52 and that the Court had no authority to carve exceptions to Rule 52(b) based on the gravity of the charged error, including specifically the constitutional error claimed by the defendant, Johnson. (Johnson complained that the court violated his Sixth Amendment right to trial by jury when the court, without objection, decided the issue of materiality in his perjury trial rather than submitting it to the jury.) Finally in United States v. Vonn, 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), the Supreme Court applied Rule 52(b) analysis to an error in taking a guilty plea under Rule 11 of the Federal Rules of Criminal Procedure. The district court failed to address the defendant when accepting the plea and the defendant did not object. Rule 11, like Rule 32, states that the trial court “must address the defendant personally.” Vonn describes Rule 52(b) as “applying by its terms to error in the application of any other Rule of criminal procedure.” Id. at 65, 122 S.Ct. 1043.
These decisions from the Supreme Court strictly applying Rule 52 regardless of the seriousness of the claimed error lead us to conclude that we should reexamine the facially simple directive of Green, Van Hook and Hill and our cases predicated on these decisions that on direct appeal the defendant is automatically entitled to re-sentencing when he is not afforded his right of allocution. Doing so, we conclude that errors resulting from a denial of the right of allocution under Rule 32 are subject to plain error review under Rule 52. The question then is how to apply Rule 52(b)’s plain error review to this error.
Under Olano, we first ask whether the district court committed an “ ‘error’ that is ‘plain’ and that ‘affect[s] substantial rights.’ ” 507 U.S. at 732, 113 S.Ct. 1770. If those criteria are met, we have the discretion to correct the forfeited error but should do so only if the error “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.? Id. (citing United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). Applying this framework, we find that the district court committed error when it failed to follow the procedures in Rule 32 and personally address Reyna and allow him to speak in mitigation of his sentence. Given the clear language of the rule and the Supreme Court case law outlined previously, this error was obvious or plain.
Our next inquiry is whether this error affected Reyna’s substantial rights. Ordinarily, in order to establish that an error “affects substantial rights” under Olano, a defendant must establish that the error was “prejudicial,” i.e. that it “affected the outcome of the district court proceedings.” Olano, 507 U.S at 734, 113 S.Ct. 1770. The defendant bears the burden of persuasion on this point. Id. at 734, 113 S.Ct. 1770. Olano recognized however that some errors may be presumed “preju *351 dicial if the defendant cannot make a specific showing of prejudice.” Id. at 735, 113 5.Ct. 1770.
We are not the first to address this question and we therefore benefit from the consideration this question has been given by other circuit courts.[6] We find most persuasive and practical the work of the Third Circuit in United States v. Adams, 252 F.3d 276 (3d Cir.2001). That court recognized that a defendant would have an onerous burden establishing that he suffered prejudice as a result of the court’s failure to allow him to allocute. He “would have to point to statements that he would have made at sentencing, and somehow show that these statements would have changed the sentence imposed by the District Court.” Id. at 287. The Third Circuit concluded that given the nature of the right and the difficulty of proving that a violation affected a specific sentence, it would “presume .prejudice when a defendant shows a violation of the right and the opportunity for such violation to have *352 played a role in the district court’s sentencing decision.” Id. This could occur even if the defendant was sentenced at the bottom of the Guideline range if
a searching review of the district court record reveals that there are any disputed facts at issue at sentencing, or any arguments raised in connection with sentencing, that if resolved in the defendant’s favor would have reduced the applicable Guidelines range or the defendant’s ultimate sentence.
Id. In Adams, the court found prejudice because Adams had been sentenced in the approximate middle of the applicable Guidelines range and defense counsel had made several arguments related to sentencing that were decided against Adams. He had challenged a two-level upward departure, his criminal history category, and the denial of a downward departure request. Id. We find this approach both pragmatic and sound. Because the analysis under the Adams approach is record specific, it avoids speculation as to what the defendant might have said or argued to mitigate his sentence. Applying that analysis here, we presume that Reyna was prejudiced by the district court’s error because he was sentenced at the top of the applicable range under the Guidelines, as well as to the maximum possible term of supervised release.
We go one further step in the analysis. Under the final prong of Olano, we retain the discretion to correct the district court’s error only if it “seriously affects the fairness, integrity or public reputation of judicial proceedings.” Olano, 507 U.S. at 736, 113 S.Ct. 1770. At this point, we depart from the conclusion reached by the Third Circuit in Adams. That court concluded that the denial of the right to allocution which has the potential to prejudice the defendant is the sort of error that would affect “the fairness, integrity or public reputation of judicial proceedings.” Accordingly, the court elected to correct the error and remanded for resentencing. Adams, 252 F.3d at 288-89.
In our view, further inquiry is required. We decline to adopt a blanket rule that once prejudice is found under the rule stated above, the error invariably requires correction. As recognized by the Supreme Court in Hill, denial of the right to allocution “is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure.” Hill, 368 U.S. at 428, 82 S.Ct. 468. In a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant’s right to allocution does not violate the last Olano prong. This case is a good example. This was Reyna’s third appearance before this district judge, his second for violations of the terms of his supervised release. When the district judge sentenced Reyna for his first violation of the terms of his supervised release, he gave him the option of serving 6 months in prison or being sentenced to a 12 month “suspended sentence,” followed by a three year term of supervised release.[7] The court warned Reyna that any violation would result in an immediate sentence of 12 months in prison. After Reyna chose the option of supervised release, the district court warned him again—
I am talking about anything. You are gone. You are on your way for 12 *353 months. It is just a matter of me setting a date for voluntary surrender.
When the district court made the order to continue Reyna on supervised release, it made a finding to the effect that Reyna “owes us 12 months. The slightest — -the slightest variance from the condition he is gone. We don’t need any further hearing.” The district court again asked Reyna if that was what he wanted, Reyna replied “yes.” Clearly Reyna had the opportunity to allocute both at his original sentencing and when resentenced following his first violation of supervised release.
When Reyna again violated the terms of supervised release by testing positive for drugs, the court enforced its agreement with Reyna and did exactly what it had promised Reyna it would do, it sentenced him to 12 months imprisonment. Reyna’s comments at his initial appearance demonstrate that he knew this would happen. When the Magistrate Judge told Reyna that Judge Vela could revoke his term of supervised release and impose a prison sentence of up to two years, Reyna replied, “I’ve been sentenced already to a year by Mr. Filemon Vela February the 3rd.... Judge Vela even told me I didn’t have to see him no more. That’s what he said.” The district court held to them original bargain, even though the judge indicated his desire to sentence Reyna to a longer period of imprisonment because Reyna’s behavior was a breach of faith that made it harder to show other defendants similar leniency. On the particular facts of this case, we are satisfied that the district court’s error in failing to address Reyna and allow him to speak in mitigation of his sentence did not seriously affect the fairness, integrity or public reputation of his sentencing proceedings. Accordingly, we decline to exercise our discretion to correct the district court’s error and affirm Reyna’s sentence.
IV.
In summary, we conclude that the district court erred in failing to comply with Fed.R.Crim.P. 32(c)(3)(C)’s requirement that the court address the defendant and give him an opportunity to make a statement in mitigation of sentence. We hold, however, that this unobjected to error should be analyzed under Fed.R.Crim. P.52(b) so that the district court’s error is subject to plain error review. We further conclude that when such an error occurs without objection by the defendant and the record reveals that the district court did not sentence at the bottom of the guideline range or if the court rejected arguments by the defendant that would have resulted in a lower sentence, we will presume that the defendant suffered prejudice from the error, i.e. that the error affected the defendant’s substantial rights. Once we determine that the defendant suffered prejudice, we will ordinarily remand for resentencing. But, even if the defendant is considered prejudiced under this test, we will conduct a thorough review of the record to determine if we should exercise our discretion to correct the error, by examining whether the error “seriously affects the fairness, integrity or public reputation of judicial proceedings,” under the final prong of Olano. Based on the unusual facts developed in this record, discussed in detail above, we decline to exercise our discretion to correct the district court’s error and affirm Reyna’s sentence. AFFIRMED.

.Effective December 1, 2002, the allocution requirement moved to Rule 32(i)(4)(A)(ii) but no substantive change is made in the restyled Rule. "Before imposing sentence, the court must ... address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence.”

. An amendment is currently being proposed to Rule 32.1 which would expressly recognize that a defendant has the right of allocution at revocation hearings.

. As amended April 29, 2002, effective December 1, 2002. Rule 52 "was amended as part of the general restyling of the Criminal Rules to make them more easily understood *348 and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.” Fed.R.Crim.P. 52, Advisory Committee Notes, 2002 Amendments.

. The right was mentioned briefly in the discussion of other issues in Groppi v. Leslie, 404 U.S. 496, 501, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972); United States v. Behrens, 375 U.S. 162, 165, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963); Andrews v. United States, 373 U.S. 334, 336-37, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963); and Machibroda v. United States, 368 U.S. 487, 489, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), discussed the right in greater detail, but simply reiterated what had been said in Green and Hill.

. The Eighth Circuit continues to remand for resentencing in cases involving errors of this type. United States v. Walker, 896 F.2d 295, 301 (8th Cir.1990). Some cases from that circuit employ the words harmless error analysis, but still in effect automatically reverse and remand. United States v. Patterson, 128 F.3d 1259 (8th Cir.1997); United States v. Vanhorn, 162 F.3d 1166, 1998 WL 390393, 1998 U.S.App. LEXIS 13638, 82 A.F.T.R.2d 98-5108 (RIA) (8th Cir.1998) (unpublished).
Several circuits follow an approach similar to that adopted by the Third Circuit in Adams, discussed above. United States v. Adams, 252 F.3d 276 (3d Cir.2001). They have concluded that resentencing is not required if the defendant received tire lowest possible sentence at the bottom of the guideline range and no arguments were made to the sentencing court that the range was incorrect for any reason— including arguments for downward departure or against upward departure, or for change in offense level or criminal history category. See United States v. Riascos-Suarez, 73 F.3d 616, 627 (6th Cir.1996); United States v. Lewis, 10 F.3d 1086, 1092 (4th Cir.1993); United States v. Mejia, 953 F.2d 461, 468 (9th Cir.1992). See also United States v. Cole, 27 F.3d 996, 999 (4th Cir.1994) (raising ground that defendant might have argued even though he did not argue those grounds on appeal). The Eleventh Circuit's approach is slightly different. It applies a plain error review to a Rule 32(c)(3) violation and only remands for resen-tencing when the defendant does not receive the lowest possible sentence within the applicable guideline range. In this circumstance, the court considers that the defendant has suffered "manifest injustice.” United States v. Prouty, 303 F.3d 1249 (11th Cir.2002). See also United States v. Tamayo, 80 F.3d 1514 (llth Cir.1996), (no manifest injustice where the defendant was given an opportunity to speak at his original sentencing, the resen-tencing was limited in scope and the defendant failed to take advantage of the district court' invitation to file supplemental authority and objections within 10 days of the resentencing hearing); United States v. Rodriguez-Velasquez, 132 F.3d 698 (11th Cir.1998) ("harmless error” and “no manifest injustice” when defendant made no objections to the amount of the sentence and was given the lowest possible sentence within the guidelines.)
The Ninth Circuit follows several different approaches.
Compare United States v. Leasure, 122 F.3d 837, 841 (9th Cir.1997)(holding resentenc-ing inappropriate unless the defendant can identify specific statements on appeal that he would have made at sentencing that likely would have impacted his sentence) and Mejia, 953 F.2d at 468 (holding resen-tencing not warranted if the defendant already received the lowest possible sentence under the Sentencing Guidelines) with United States v. Medrano, 5 F.3d 1214, 1219 (9th Cir.1993) (adopting a rule that in practice requires automatic resentencing, because even though the defendant in the trial court had raised no grounds for a lower sentence, the court nevertheless remanded for resentencing based on speculation about what the defendant might have said during allocution had he been given the chance) and United States v. Navarro-Flores, 628 F.2d 1178, 1184 (9th Cir.1980) (automatically remanding for resentencing when the right of allocution is violated).
Adams, 252 F.3d at 282, n. 4.

. Although the district court spoke in terms of a suspended sentence, suspended sentences have not been recognized under federal law since 1987. United States v. Landeros-Arreola, 260 F.3d 407, 413 (5th Cir.2001). In essence, the district court simply continued Reyna's supervised release.