IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 4, 2008

Charles R. Fulbruge III
Clerk

No. 07-30585

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ANTHONY QUINN COLEMAN

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
2:05-CR-20038-1

Before KING, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

This is the second time we have considered whether the district court erred in sentencing Anthony Coleman. On the first go-around, the district court sentenced Coleman to 120 months' imprisonment, a 54% upward departure from the Sentencing Guidelines range. We vacated the sentence and remanded for re-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentencing.[1] The district court imposed the same sentence. This time, we affirm.

I

Coleman pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Coleman's Guidelines range was 63 to 78 months. Prior to sentencing, the district court told the parties that it was considering an upward departure because of Coleman's "criminal history and the nature of the offense."[2] However, at sentencing, the district court made no mention of Coleman's history and instead "indicated that it considered Coleman's offense to be a different situation from a typical felon-in-possession charge."[3] The court sentenced Coleman to 120 months' imprisonment, 42 months above the top of the Guidelines range.

On appeal, we held that the district court failed to articulate sufficient reasons to justify the upward departure. We concluded that the court's finding that Coleman's offense presented a "'different situation' from a typical felon in possession charge" rested upon a clearly erroneous factual finding.[4] Turning to Coleman's criminal history, we found that it could not support the sentence for two reasons. First, the district court did not mention it during the sentencing hearing. Second, assuming we should consider it, we concluded that the district court failed to explain why Coleman's criminal history justified an upward departure:

> Even if we were to consider the explanation in the written judgment, however, we would find it inadequate, because the court did not "specify in writing . . . the specific reasons why the applicable criminal history category substantially under-represents

---

[1] See United States v. Coleman, No. 06-30197, 212 Fed. Appx. 297 (5th Cir. Jan. 3, 2007) (per curiam) (unpublished opinion).

[2] Id. at 298.

[3] Id.

[4] Id. at 299.

the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(c)(1). In United States v. Zuniga-Peralta, 442 F.3d 345 (5th Cir. 2006), we upheld a sentence where the court's written statement failed to provide specific factual reasons; we did so because the court had expressly adopted the findings of the PSR, which recommended a departure under § 4A1.3.

Coleman's PSR makes no such recommendation. Although Coleman has a number of older convictions that were not considered in calculating his criminal history score, the district court did not indicate why criminal history category VI does not adequately account for these convictions, particularly in view of the fact that none of Coleman's prior felony convictions was for violent conduct. Without specific, stated reasons for the upward departure, the departure does not survive the abuse-of-discretion standard of review.[5]

Accordingly, we vacated and remanded for re-sentencing.

## II

The district court scheduled a re-sentencing hearing. The day of the hearing, but prior to the hearing, the district court gave the parties a written memorandum that explained that the court would impose the same sentence as before. The court stated that "even though the defendant has scored sufficient criminal history points to place him in category VI, even the highest criminal category seriously under-represents the seriousness of the defendant's criminal history." The court went on to explain that Coleman's criminal history score failed to account for eleven prior felonies and misdemeanors because of the age of the conviction or the unavailability of offense reports. Nor did the criminal history score account for five intervening arrests. The court also felt that the state courts had afforded Coleman "unearned leniency." The court noted that Coleman had been convicted of "simple battery," as well as two convictions for burglary of an inhabited dwelling—thus, the court found that Coleman's

---

[5] Id. at 300.

criminal history "is not a violence-free record." Based on Coleman's "continuous criminal involvement for the past 27 years and the fact that his criminal history score seriously misrepresents his criminal history," the court stated that it would impose the same 120 month sentence as before.

During the sentencing hearing, the court told the parties that its memorandum ruling laid out reasons for the upward departure. The court then stated, "Since this is not the initial sentencing, I do not believe there is any right to allocution. I heard all at the first sentencing, so I don't thin[k] there is any need to go through that." The court then re-imposed the original sentence.

Coleman's counsel objected,

I would object for the record, your Honor, and note the Fifth Circuit's opinion. I just got handed the copy of the memorandum ruling, and I note that the Fifth Circuit opinion notes that it did not adequately account - - the district court did not indicate why criminal history category six does not adequately account for these convictions particularly in view of the fact that none of Coleman's prior felony convictions were for violent conduct. And I noted, and just briefly when I was able to read the memorandum ruling, it appears that some mention was made about that. So just - - because I just got it, I need to object again for the record; and for the sentence imposed again, for the same reasons I earlier objected to.

The court overruled the objection. This appeal follows.

## III

The Supreme Court has explained that its "explanation of 'reasonableness' review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."[6] This is so "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range."[7] In conducting this review, we first

---

[6] Gall v. United States, 128 S. Ct. 586, 594 (2007).

[7] Id. at 597.

"ensure that the district court committed no significant procedural error."[8] We review the district court's factual findings for clear error, and its interpretation of the Guidelines de novo.[9] We then consider the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range."[10]

## A

Coleman first argues that the district court erred by not offering him the opportunity to allocute at the re-sentencing hearing. The Government does not challenge Coleman's contention that the right to allocution extends to re-sentencing.[11] The Government does contend, however, that our review is limited to plain error because Coleman failed to object.[12] We agree. Although Coleman's counsel objected during the re-sentencing hearing, the objection did not raise Coleman's right to allocute.[13]

Pursuant to our en banc decision in United States v. Reyna, the Government concedes the district court's error in failing to invite Coleman to

---

[8] Id.

[9] United States v. Griffith, __ F.3d __, 2008 WL 851120, at *3 (5th Cir. Apr. 1, 2008).

[10] Gall, 128 S. Ct. at 597.

[11] See United States v. Moree, 928 F.2d 654 (5th Cir. 1991) (holding, in circumstances similar to those here, that the defendant had a right to allocute at re-sentencing).

[12] See United States v. Reyna, 358 F.3d 344 (5th Cir. 2004) (en banc) (holding that plain error review applies where the defendant fails to object to the lack of an opportunity to allocute).

[13] See United States v. Burton, 126 F.3d 666, 673 (5th Cir. 1997) ("[T]he touchstone is whether the objection was specific enough to allow the trial court to take testimony, receive argument, or otherwise explore the issue raised.").

allocute was plain,[14] and that it affected Coleman's substantial rights.[15] The Government urges, however, that we should not exercise our discretion to correct the error because it does not "'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'"[16]

In Reyna, we rejected a "blanket rule that once prejudice is found . . . the error invariably requires correction." We explained that "the right to allocution 'is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure.'"[17] Thus, we recognized that "[i]n a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant's right to allocution does not violate the last Olano prong."[18] There must be a basis in the record for concluding that a reasonable jurist would have imposed a lesser sentence.[19]

We decline to exercise our discretion because Coleman has not pointed to anything that would have moved a reasonable jurist to impose a lesser sentence.

---

[14] See 358 F.3d at 351 ("[W]e find that the district court committed error when it failed to follow the procedures in Rule 32 and personally address Reyna and allow him to speak in mitigation of his sentence. Given the clear language of the rule and the Supreme Court case law outlined previously, this error was obvious or plain.").

[15] See id. at 353 (explaining that when "the record reveals that the district court did not sentence at the bottom of the guideline range or if the court rejected arguments by the defendant that would have resulted in a lower sentence, we will presume that the defendant suffered prejudice from the error, i.e. that the error affected the defendant's substantial rights" (emphasis added)).

[16] Id. at 352 (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

[17] Id. (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

[18] Id.

[19] Cf. United States v. Magwood, 445 F.3d 826, 830 (5th Cir. 2006) (stating that "defendants 'have to show some objective basis that would have moved the trial court to grant a lower sentence; otherwise, it can hardly be said that a miscarriage of justice has occurred'" (quoting Reyna, 358 F.3d at 356 (Jones, J., concurring))).

As for explanation, the district court was specific as to why it was re-imposing the sentence: Coleman's long and continuous criminal history, which it thought the criminal history score failed to reflect. Coleman points to nothing that would have undermined or altered this understanding of his criminal history or the role of substance abuse. Coleman makes no argument that the list of convictions and other arrests in the PSR contained conduct for which Coleman was not responsible or otherwise mis-described the pertinent facts. To the extent Coleman contends that there were disputed fact issues as to the underlying offense conduct that he might have cleared up, he does not explain why it would have mattered when the district court unambiguously explained that it was departing upward based on the under-representation of his criminal history. In short, Coleman points to nothing that arguably would have impacted the district court's thinking. We therefore find no "miscarriage of justice" and decline to exercise our discretion.

B

Coleman next argues that the 42 month upward departure is unreasonable, that the district court abused its discretion. The Guidelines provide that "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."[20] We review the decision to depart, and the extent of the departure, for abuse of discretion.[21] "An upward

---

[20] U.S.S.G. § 4A1.3(a). The parties appear in agreement that the district court upwardly departed under the Guidelines as opposed to imposing a non-Guideline sentence. Although it is not entirely clear, we also think that the court departed under the Guidelines. See United States v. Smith, 440 F.3d 704, 708 n.3 (5th Cir. 2006). Even if we were to conclude the court intended to impose a non-Guidelines sentence, we would affirm for essentially the same reasons. See id. at 709.

[21] United States v. Saldana, 427 F.3d 298, 308 (5th Cir. 2005).

departure by a district court is not an abuse of discretion if the court's reasons for departing 1) 'advance the objectives set forth in 18 U.S.C. § 3553(a)(2)' and 2) 'are justified by the facts of the case.'"[22]

The nub of Coleman's claim is that his criminal history does not justify the departure. However, as the district court explained, Coleman had some eleven other convictions, a mixture of felony and misdemeanors, that were not reflected in his criminal history score. The district court was particularly concerned with the continuous nature of Coleman's criminal acts, that is, he has consistently broken the law for more than twenty-five years; the court's concern with Coleman's recidivism is justified, as is a conclusion that his recidivism was not adequately accounted for. Moreover, we cannot say that the district court's concern that Coleman received "unearned leniency" from the prior sentencing courts was unmerited.[23] We do not think the district court abused its discretion in determining that an upward departure was warranted, nor was the extent of the departure unreasonable. We have previously affirmed departures for similar reasoning and where the departure was of a similar or greater magnitude.[24]

Coleman also argues that the district court improperly relied on five prior arrests of his that did not lead to convictions to justify the upward departure. As Coleman explains, U.S.S.G. § 4A1.3(a)(3) provides that "[a] prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement." We need not delve into this purported error deeply, for we think it is clear that the court would not have imposed a different sentence but

---

[22] United States v. Zuniga-Peralta, 442 F.3d 345, 347 (5th Cir. 2006) (quoting Saldana, 427 F.3d at 310).

[23] See United States v. Lee, 358 F.3d 315, 328-29 (5th Cir. 2004).

[24] See, e.g., Zuniga-Peralta, 442 F.3d at 347-48; United States v. Smith, 417 F.3d 483, 490-93 (5th Cir. 2005); Lee, 358 F.3d at 328-29.

for the alleged error.[25]  To the extent Coleman argues that the district court "double counted" his conviction for burglary of an inhabited dwelling—that is, relied on it to depart upwardly even though it was factored into his criminal history score—we do not read the district court as counting it twice.  Rather, we understand the court as making the point that it thought that some of Coleman's crimes involved what it considered violent conduct.  Coleman also complains about the district court's recitation of the facts of the underlying offense in its written reasons; however, Coleman has shown no reversible error in that discussion, especially given that the district court upwardly departed because of Coleman's under-represented criminal history.

AFFIRMED.

---

[25] See United States v. Jones, 489 F.3d 679, 681 (5th Cir. 2007) ("Consideration of prior arrests by a district court in sentencing is error.  If Jones had preserved this error, we would likely review under the harmless error standard." (citation omitted)); see also Williams v. United States, 503 U.S. 193, 202-03 (1992).